**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **TONJA CHAMBERLAIN,** | | |
| Plaintiff, | | Civil Action No. 11-1808 (JAP) |
| v. | | **OPINION AND ORDER** |
| **THE UNITED STATES OF AMERICA,** | | |
| Defendant. | | |

Presently before the Court is Plaintiff Tonja Chamberlain's motion for leave to amend the Complaint. [Docket Entry No. 9].  Plaintiff seeks leave to increase her claim for damages in excess of the amount of the administrative claim she made under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §2675, for injuries she allegedly suffered when her vehicle was hit by a United States Postal Service vehicle.  Plaintiff's Brief ("Plaint.'s Br.") at 1 [Docket Entry No. 9-2].  Defendant, the United States of America, opposes the motion, arguing that the proposed amendment is futile. [("Def.'s Br.") at Docket Entry No. 10].  Plaintiff filed a reply brief ("Plaint.'s Reply") in further support of the motion. [Docket Entry No. 12-1].  For the reasons set forth below, the motion is DENIED.

**Statement of Facts[1]**

On or about March 23, 2009, Plaintiff was involved in an automobile accident with a vehicle owned by the United States Postal Service ("Postal Service").  Plaintiff submitted an administrative tort claim on or about May 21, 2009 to the Postal Service in the amount of

---

[1]For purposes of this motion only, the Court takes the facts alleged in the Complaint and proposed Amended Complaint as true. Travelers Indem. Co., v. Dammann & Co., Inc., 592 F.Supp.2d 752 (D.N.J. 2008).

$150,000, with regard to the injuries she sustained in the accident. Complaint at 1-2 [Docket Entry No. 1]; Plaint.'s Br. at 1.  In July 2010, Plaintiff's condition deteriorated and on September 1, 2010, she underwent back surgery.  Id.

On the same day as her surgery, Plaintiff's counsel amended her administrative claim, to increase the amount sought to $350,000.  Plaint.'s Br. at 1; Plaint.'s Br. Exh. 2 [Docket Entry No. 9-2]   The Postal Service then exercised its right under 28 C.F.R. §14.2 to consider the increased claim for an additional six months.  See Plaint.'s Br. at 1; Plaint.'s Br. Exh. 3 [Docket Entry No. 9-3].

The parties engaged in settlement discussions, and on or about February 10, 2011, the Postal Service made a settlement offer to Plaintiff, which was rejected by counsel's letter dated February 25, 2011.  Plaint.'s Br. Exhs. 5 & 6 [Docket Entry Nos. 9-5 & 9-6].  In the February 25 letter, Plaintiff reiterated her demand of $350,000 and further stated that she believed the value of her injury to be even greater.  Plaintiff expressly referenced payments made by her personal injury insurance ("PIP") carrier, State Farm, in the amount of $99,000. Plaint.'s Br. Exh. 6. In closing, Plaintiff's counsel indicated that "[i]f the case goes into litigation, we reserve the right to increase the demand based on any new medical developments and our experts' evaluation of her lost earning capacity." Id.  Plaintiff enclosed with the letter a log of what Plaintiff then believed to be all of the medical expenses incurred as of February 18, 2011.  Plaint.'s Br. Exh.  7 [Docket Entry No. 9-7].

The parties were unable to reach a settlement of the claim, and in a letter dated March 16, 2011, the Postal Service denied Plaintiff's claim. Complaint at 2; Plaint.'s Br. at 2.  Plaintiff filed suit on March 30, 2011. [See Docket Entry No. 1].

Sometime in mid-August, 2011, Plaintiff received an updated log from State Farm, detailing Plaintiff's medical expenses incurred to date. Plaint.'s Br. at 2; Plaint.'s Br. Exh. 8 [Docket Entry No. 9-8].  Several new charges, totaling approximately $100,000, had been added, including several relating to the September 1, 2010 surgery. Plaint.'s Br. at 2; Plaint.'s Br. Exh. 8.  Plaintiff now seeks leave to increase her claim for damages to $460,332.66, based on the new expenses included on the August 2011 log.

**Analysis**

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after service of the pleading, or if a responsive pleading is required, within 21 days of service of that responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier.  After that, a party must seek written consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  Under Rule 15(a)(2), leave to amend should be freely given, and absent "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment," the court should allow the amendment. WHY ASAP, LLC v. Compact Power, 461 F.Supp.2d 308, 311 (D.N.J. 2006), citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

An amendment is futile when it fails to state a claim upon which relief may be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1983).  The standard of review for futility is therefore the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See id.; Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir 1983).  The Court must accept as true the factual elements alleged in the well-pleaded complaint but may disregard any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.

3

2009).  The Court must then determine if the facts alleged are sufficient to show a "plausible

claim for relief."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).

       As a general matter, the United States is immune from suit unless it first consents, in

which case that consent defines the court's jurisdiction with regard to any action against the

United States.  In terms of the FTCA, "[t]he Third Circuit has recently held that, '[b]ecause the

requirements of presentation and a demand for a sum certain are among the terms defining the

United States's consent to be sued, they are jurisdictional."  Fontanez v. Lopez, 2011 WL

2745809 (D.N.J. July 12, 2011), quoting White-Squire v. United States Postal Serv., 592 F.3d

453, 457-58 (3d Cir. 2010) (finding that the failure to present a claim for a sum certain was fatal

despite the claimant's argument that it was justified because the claimant's medical treatment

was ongoing).  Thus, "'[b]ecause the [FTCA] constitutes a waiver of sovereign immunity, the

Act's established procedures have been strictly construed.'"  Wilson v. Cherry Hill, 2011 WL

3651274 (D.N.J. Aug. 18, 2011).

       Under the FTCA, any party asserting a claim for money damages arising out of the

negligent or wrongful act of a government employee must first file a claim with the

administrative agency at issue.  28 U.S.C. §2675(a).  The agency then has six months within

which to consider the claim and respond.  28 C.F.R. §14.2.  The injured party may file suit after

the claim is denied or after the time has expired without any action taken by the agency.  28

U.S.C. §2675(a).  A party may amend his or her claim up until the agency issues a final denial or

upon the exercise of the claimant's option to sue after the expiration of the agency's six months

consideration period.  28 C.F.R. §14.2.  In any lawsuit filed, the claimant is limited to the amount

of the administrative claim, except "where the increased amount is based upon newly discovery

4

evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening fact, relating to the amount of the claim."  28 U.S.C. §2675(b).

The purpose of the sum certain limitation in §2675 "is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability."  Low v. United States, 795 F.2d 466, 471 (5th Cir. 1986).  As the Fifth Circuit found in Lebron v. United States, 279 F.3d 321, 330-31 (5th Cir. 2002), "[r]equiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case.  This encourages settlement of FTCA cases in accordance with the statute's purposes."  Accordingly, in making a claim under §2675, a claimant must set forth a "worst-case scenario" even if it means estimating future expenses flowing from a known injury.

A claimant may trigger the claim limit exception in §2675(b) by providing "newly discovered evidence" or "intervening facts" which could not be reasonably anticipated in planning for a "worst-case scenario."  "Newly discovery evidence" and "intervening facts" have been interpreted as relating to the knowledge of the extent of the injury, and, more particularly, whether the claimant knew or reasonably could have known the full potential of his or her injury.  See, e.g., Dickerson v. United States, 280 F.3d 470, 475-76 (5th Cir. 2002).  In trying to meet the standard set by §2675(b), the claimant must present more than just new information that "merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known."  Lebron, 279 F.3d at 330.  Rather, to be deemed newly discovered or intervening, information must shed "new light on the basic severity of the claimant's condition - that is, if it

5

materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." Id.; see also Industrial Indemnity Co. v. United States, 504 F.Supp. 394, 399 (E.D. Ca. 1980) ("All litigants are required to place a dollar value on their injuries (including prospective expenses and suffering), within the two years allowed to file an administrative claim."); c.f., Richardson v. United States, 841 F.2d 993, 999 (9th Cir. 1988) (remanding for a determination of whether the full extent of the plaintiff's injuries were reasonably foreseeable given that further injuries, including an amputation, occurred after the claim was filed); Rabovsky v. United States, 265 F.Supp. 587, 588 (D.Conn. 1967) (allowing an excess claim to proceed, given that the claim contained a clear typographical error ($25 instead of $2500) and the medical report and bills were not available to the plaintiff's counsel despite repeated efforts to obtain them, and plaintiff's attorney therefore could not assess the extent of the injury or related expenses at the time of the filing of the administrative claim).

In the instant case, Plaintiff argues that she was acting in good faith and with reasonable diligence when she relied on the PIP benefits shown on the State Farm statement when she submitted her amended claim and was negotiating a possible settlement. Plaint.'s Br. at 8-11; Plaint.'s Reply at 3-4. Plaintiff contends that it was unforeseeable that her PIP carrier and the medical services providers would fail to accurately report the actual expenses on a timely basis. Plaint.'s Reply at 3.

Defendant argues Plaintiff's motion to amend is futile as she fails to meet the burden imposed by 28 U.S.C. §2675(b). See Def.'s Br. Defendant cites to several cases which have denied or overturned amended claims on the grounds that the materialization of the worse-case scenario was not sufficient to allow an amended claim where the claimants were aware of the

severity of the injuries when the claim was made.  Def.'s Br. at 5-8.  Defendant contends that Plaintiff here is in the same position: she knew the extent of her injuries by the time she filed her amended administrative claim.  Defendant furthermore argues that since Plaintiff was aware not only of her injuries, but of the treatment as well, the cost of her treatment was reasonably foreseeable and Plaintiff should have estimated her potential claim on a worst-case scenario of those costs.  Def.'s Br. at 8-9.

The Court finds that Plaintiff has not demonstrated the existence of new evidence or intervening facts pursuant to §2675(b) to trigger the exception to the general immunity of the United States.  Her task was to submit a claim which represented her "worst-case scenario" based on the injuries of which she was reasonably aware.  Plaintiff does not claim that her condition deteriorated after she amended her claim on September 1, 2010, or that there is any new evidence relating to her condition, or that she was unable to evaluate the extent of her injuries.  Instead, Plaintiff argues that the increased PIP payments were not reasonably foreseeable when she made her administrative claim.  Plaint.'s Br. at 3.  Specifically, Plaintiff asserts that on September 1, 2010, the same date that she had surgery, she amended her administrative claim from $150,000 to $350,000.  Plaint.'s Br. Exh. 2.  After that, on September 9, 2010, the Postal Service exercised its right to extend the time to consider the claim for an additional six months, see Plaint.'s Br. Exh. 3 [Docket Entry No. 9-3], which meant that Plaintiff had up to an additional six months to amend her claim.  See 28 C.F.R. §14.2.  Plaintiff confirmed her demand of $350,000 on February 25, 2011.  See Plaint.'s Br. Exh. 6.  At that point, Plaintiff said that she was relying on the State Farm log as to the amount already spent but acknowledged that the PIP expenses could go up and the claim was worth more than the amount stated.  See id.  Notably, Plaintiff attempted to reserve

7

her right to amend if suit were filed.  Id.  It was not until August 15, 2011, almost five months

after this suit was filed, that Plaintiff learned that the February 2011 PIP statement did not

include all of the expenses, and in particular failed to include certain expenses from the

September 1, 2010 surgery.  Plaint.'s Br. at 8; see also Plaint.'s Br. Exh. 8.

There is no question that Plaintiff was fully aware of the extent of her injuries at the time

she amended her claim in September 2010, and that there has been no unforeseen worsening of

her condition.  The same is true of February 2011, when she expressly stated that her claim was

worth more than the amount stated but she failed to amend.  At best, Plaintiff asserts that she

relied on the State Farm statement of PIP payments in underestimating the expenses actually

associated with her surgery.  But actual expenses are not the touchstone of the §2675(b)

exception.  While Plaintiff may have acted in good faith and with reasonable diligence in making

her claim, it is Plaintiff's burden to make her worst-case estimate of those expenses.  She did not

do so, and her motion to amend is therefore denied.

For the reasons set forth above, and for good cause shown,


IT IS on this 18th of January, 2012,


ORDERED that Plaintiff's Motion to Amend [Docket Entry No. 9] is DENIED.


**LOIS H. GOODMAN**
**United States Magistrate Judge**

8